Case 2:18-cv-00423-TMP   Document 1-1   Filed 03/19/18   Page 1 of 20            FILED
                                                                                        2018 Mar-19 AM 09:45
                                                                                        U.S. DISTRICT COURT
                                                                                        N.D. OF ALABAMA

DOCUMENT 2
ELECTRONICALLY FILED
2/9/2018 12:23 PM
58-CV-2018-900122.00
CIRCUIT COURT OF
SHELBY COUNTY, ALABAMA
MARY HARRIS, CLERK

## IN THE CIRCUIT COURT OF SHELBY COUNTY, ALABAMA

| | |
|---|---|
| CHRISSY SNOW, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>GMAC Mortgage Corporation, a foreign )<br>corporation doing business in the State of )<br>Alabama, Ocwen Loan Servicing LLC, a foreign )<br>Limited Liability Company doing business )<br>in the state of Alabama, Corelogic Services, LLC )<br>a Foreign Limited Liability Corporation doing )<br>Business in the state of Alabama, Ditech )<br>Financial, LLC, a foreign Limited Liability )<br>Company doing business in the state of Alabama, )<br>and A, B, C, D, E, and F, said fictitious parties, )<br>those persons, or entities who are the legal )<br>successors in interest to the named Defendants )<br>and G, H, I, J, K and L, said fictitious parties )<br>being those persons or entities who committed )<br>or who combined and contributed with/to others )<br>to commit the wrongful acts complained of in this )<br>Complaint; the true names and identities of all )<br>such fictitious parties being unknown to the )<br>Plaintiff at this time, but which will be )<br>substituted by Amendment when ascertained. )<br>)<br>Defendants. ) | Case No. _____ |

### COMPLAINT

1. Plaintiff, Chrissy Snow is a resident of Shelby County, Alabama.

2. Defendant, GMAC Mortgage Corporation, (GMAC) on information and belief is a Foreign Corporation doing business in Shelby County, Alabama.

3. Defendant, Ocwen Loan Servicing LLC, (Ocwen) on information and belief is a foreign Limited Liability Company doing business in Shelby County, Alabama.

4. Defendant Corelogic Services, LLC, (Corelogic) on information and belief is a Limited Liability Company doing business in Shelby County, Alabama.

5. Defendant Ditech Financial LLC, (Ditech) on information and belief is a Limited Liability Company doing business in Shelby County, Alabama

6. Fictitious Defendants A, B, C, D, E, and F, are those persons or entities who are the legal successors in interest to the named Defendant.

7. Fictitious Defendants G, H, I, J, K, and L are those persons or entities who committed, combined with and/or contributed to the acts of others to commit the wrongful deeds complained of in this Complaint; the true names and identities of all such fictitious parties being unknown to the Plaintiff at this time, but which will be substituted by Amendment when ascertained.

## FACTS OF THE CASE

8. This case arises out of a mortgage which was executed with GMAC on or about the 25th day of September, 2005.

9. Defendant(s), by contract, was collecting and escrowing the dollar amounts necessary to pay the Plaintiff's taxes and insurance each year and did pay said taxes, according to the tax records in the Shelby County, Alabama tax office, for tax years beginning 2006 through 2012.

10. In 2013, tax records indicate Defendant Ocwen submitted property tax payments on behalf of the Plaintiff.

11. In 2014, Defendant Corelogic submitted property tax payments on behalf of the Plaintiff.

12. Unbeknownst to Plaintiff, no property taxes were paid for the tax year 2015, although Plaintiff was still paying taxes through her Mortgagor and through her monthly mortgage payments.

13. Unbeknownst to Plaintiff, on or about March 21, 2016, Mercury Funding, LLC then

purchased the property owned by the Plaintiff at a tax sale and paid thirty-six thousand six hundred seventy-three dollars and eight cents ($36,673.08).

14. Unbeknownst to Plaintiff, on or about December 14, 2016, Mercury Funding, LLC subsequently paid the property taxes for the tax year 2016 in the amount of six hundred fifty-six dollars and sixteen cents (656.16). **Exhibit 1**

15. Unbeknownst to Plaintiff, on or about March 29, 2017, Defendant Corelogic paid three-thousand four-hundred ninety-four dollars and twenty-five cents to "redeem" Plaintiff's property according to the Certificate of Land Redemption in the Office of the Tax Commissioner Shelby County, Alabama. **Exhibit 2**

16. At some point between March 29, 2017, the date of the redemption payment, and September 1, 2017, Defendant Ditech became the owner of the Plaintiff's mortgage at which time the Plaintiff's monthly payment was increased by approximately thirty-two percent (32%), i.e., an additional $233.75 per month.

17. When Plaintiff's mortgage payments increased for no stated reason, she made numerous attempts to request information from the current mortgage holder, Defendant Ditech. Plaintiff was never given any explanation.

18. Plaintiff sought legal assistance from an attorney, the undersigned, who sent a letter to Defendant Ditech on September 10, 2017 requesting information as to the Plaintiff's increased payment. **Exhibit 3**

19. After 60 days had elapsed with no word from Defendant Ditech, on November 29, 2017, the undersigned sent correspondence with the same inquiry to Defendant Corelogic. **Exhibit 4**

20. After more than 90 days elapsed, Defendant Ditech finally responded by letter on December 12, 2017 stating the increase was due to a shortage in the escrow account. **Exhibit 5**

21. Since September 2017, Plaintiff has been forced to pay an additional $233.75 monthly to cover the escrow shortage.

## COUNT I – VIOLATION OF RESPA PROVISIONS – PROHIBITED MISREPRESENTATIONS

22. At all times relevant to this Complaint, Defendants GMAC, Ocwen, Corelogic, and Ditech were subject to the provisions of the Real Estate Settlement Procedures Act (RESPA) at 12 C.F.R. Part 1024.

23. Defendants, jointly and severally, represented in the HUD statement that payments to escrow would be used to pay property tax each year. Defendants complied with those provisions until 2015 when they failed to pay property taxes and failed to provide an accounting of any alleged shortage.

24. Plaintiff never received notice of an escrow shortage, if one existed. Plaintiff never received notice of a "tax sale." In fact, Plaintiff never received any notice in 2015 or 2016, when these transactions occurred.

25. It was not until December 17, 2017, after hiring an attorney, that Plaintiff learned of these events.

26. 12 C.F.R. §1014.3 provides in pertinent part "It is a violation of this part for any person to make any material misrepresentation, expressly or by implication, in any commercial communication, regarding any term of any mortgage credit product, including but not limited to misrepresentations about: *(e)* The terms, amounts, payments, or other requirements relating to taxes or insurance associated with the mortgage credit product, including but not limited to misrepresentations about: *(1)* Whether separate payment of taxes or insurance is required; or *(2)*

The extent to which payment for taxes or insurance is included in the loan payments, loan amount, or total amount due from the consumer..."

27. 12 C.F.R. §1014.3 (b) requires the servicer to perform "*Aggregate (or) composite analysis,* hereafter called *aggregate analysis,* means an accounting method a servicer uses in conducting an escrow account analysis by computing the sufficiency of escrow account funds by analyzing the account as a whole. Appendix E to this part sets forth examples of aggregate escrow account analyses; and *Annual escrow account statement* means a statement containing all of the information set forth in §1024.17(i). As noted in §1024.17(i), a servicer shall submit an annual escrow account statement to the borrower within 30 calendar days of the end of the escrow account computation year, after conducting an escrow account analysis."

28. 12 C.F.R. §1014.3 (c) provides the servicer shall "(3) *Subsequent escrow account analyses.* For each escrow account, the servicer must conduct an escrow account analysis at the completion of the escrow account computation year to determine the borrower's monthly escrow account payments for the next computation year, subject to the limitations of paragraph (c)(1)(ii) of this section. In conducting the escrow account analysis, the servicer must estimate the disbursement amounts according to paragraph (c)(7) of this section. Pursuant to paragraph (k) of this section, the servicer must use a date on or before the deadline to avoid a penalty as the disbursement date for the escrow item and comply with any other requirements of paragraph (k) of this section. The servicer must use the escrow account analysis to determine whether a surplus, shortage, or deficiency exists, and must make any adjustments to the account pursuant to paragraph (f) of this section. Upon completing an escrow account analysis, the servicer must prepare and submit an annual escrow account statement to the borrower, as set forth in paragraph (i) of this section."

29. Under 12 C.F.R. 1024.3 (e) (1) If the *new servicer* changes either the monthly payment amount or the accounting method used by the transferor (old) servicer, then the new servicer shall provide the borrower with an initial escrow account statement within 60 days of the date of servicing transfer. (i) Where a new servicer provides an initial escrow account statement upon the transfer of servicing, the new servicer shall use the effective date of the transfer of servicing to establish the new escrow account computation year. (ii) Where the new servicer retains the monthly payments and accounting method used by the transferor servicer, then the new servicer may continue to use the escrow account computation year established by the transferor servicer or may choose to establish a different computation year using a short-year statement. At the completion of the escrow account computation year or any short year, the new servicer shall perform an escrow analysis and provide the borrower with an annual escrow account statement. (2) The new servicer shall treat shortages, surpluses and deficiencies in the transferred escrow account according to the procedures set forth in §1024.17(f).

30. Further, under 12 C.F.R. 1024.3 Defendants, jointly and severally, are required to make timely payments. "(k) *Timely payments.* (1) If the terms of any federally related mortgage loan require the borrower to make payments to an escrow account, the servicer must pay the disbursements in a timely manner, that is, on or before the deadline to avoid a penalty, as long as the borrower's payment is not more than 30 days overdue. (2) The servicer must advance funds to make disbursements in a timely manner as long as the borrower's payment is not more than 30 days overdue. Upon advancing funds to pay a disbursement, the servicer may seek repayment from the borrower for the deficiency pursuant to paragraph (f) of this section."

31. 12 C.F.R. 1024.17 (f) establishes all the Defendants legal duty to the Plaintiff. This section controls the escrow account. It states:

(f) *Shortages, surpluses, and deficiencies requirements*—(1) *Escrow account analysis.* For each escrow account, the servicer shall conduct an escrow account analysis to determine whether a surplus, shortage or deficiency exists.

(i) As noted in §1024.17(c)(2) and (3), the servicer shall conduct an escrow account analysis upon establishing an escrow account and at completion of the escrow account computation year.

(ii) The servicer may conduct an escrow account analysis at other times during the escrow computation year. If a servicer advances funds in paying a disbursement, which is not the result of a borrower's payment default under the underlying mortgage document, then the servicer shall conduct an escrow account analysis to determine the extent of the deficiency before seeking repayment of the funds from the borrower under this paragraph (f).

(2) *Surpluses.* (i) If an escrow account analysis discloses a surplus, the servicer shall, within 30 days from the date of the analysis, refund the surplus to the borrower if the surplus is greater than or equal to 50 dollars ($50). If the surplus is less than 50 dollars ($50), the servicer may refund such amount to the borrower, or credit such amount against the next year's escrow payments.

(ii) These provisions regarding surpluses apply if the borrower is current at the time of the escrow account analysis. A borrower is current if the servicer receives the borrower's payments within 30 days of the payment due date. If the servicer does not receive the borrower's payment within 30 days of the payment

due date, then the servicer may retain the surplus in the escrow account pursuant to the terms of the federally related mortgage loan documents.

(iii) After an initial or annual escrow analysis has been performed, the servicer and the borrower may enter into a voluntary agreement for the forthcoming escrow accounting year for the borrower to deposit funds into the escrow account for that year greater than the limits established under paragraph (c) of this section. Such an agreement shall cover only one escrow accounting year, but a new voluntary agreement may be entered into after the next escrow analysis is performed. The voluntary agreement may not alter how surpluses are to be treated when the next escrow analysis is performed at the end of the escrow accounting year covered by the voluntary agreement.

(3) *Shortages.* (i) If an escrow account analysis discloses a shortage of less than one month's escrow account payment, then the servicer has three possible courses of action:

(A) The servicer may allow a shortage to exist and do nothing to change it;

(B) The servicer may require the borrower to repay the shortage amount within 30 days; or

(C) The servicer may require the borrower to repay the shortage amount in equal monthly payments over at least a 12-month period.

(ii) If an escrow account analysis discloses a shortage that is greater than or equal to one month's escrow account payment, then the servicer has two possible courses of action:

(A) The servicer may allow a shortage to exist and do nothing to change it; or

(B) The servicer may require the borrower to repay the shortage in equal monthly payments over at least a 12-month period.

**12 C.F.R. 1017**

32. Defendants, jointly and severally, failed to perform their legal duty under RESPA. As such they are collecting unearned fees which Plaintiff has been paying since September 2017. Under RESPA at 12 C.F.R. 1024.14, Plaintiff is entitled to court costs, attorney fees and servicer can be fined not more that $10,000 or one-year imprisonment or both.

## COUNT I I - BREACH OF FIDUCIARY DUTY

33. Plaintiff realleges and incorporates by reference herein each and every allegation set forth in paragraphs 1-32 of this complaint.

34. Plaintiff made each and every payment due to the defendant as they came due.

35. Plaintiff included in each payment funds to be applied to the escrow account.

36. Defendants received each and every payment and had a duty to pay the annual tax payment and insurance payment on behalf of the Plaintiff.

37. On or about December 2015 Defendants failed to make the payment for property taxes to the Shelby County, Alabama tax collector.

38. In failing to make the necessary payments for the Plaintiffs tax bill the Defendants breached their fiduciary duty to the Plaintiff.

## COUNT III – BREACH OF CONTRACT

39. Plaintiff realleges and incorporates by reference herein each and every allegation set forth in paragraphs 1- 38 of this complaint.

40. Plaintiff signed a Mortgage Instrument and Promissory Note with the Defendants as required by RESPA and made monthly payments to the Defendants in an amount to include Principal, interest and funds necessary to allow for taxes and insurance..

41. Defendant's failed to make the necessary tax payment for the year 2015 and in addition failed to provide the Plaintiff with an annual escrow account statement as noted in §1024.17(i)," a servicer shall submit an annual escrow account statement to the borrower within 30 calendar days of the end of the escrow account computation year, after conducting an escrow account analysis."

42. Defendant's failed to execute their contractual duty to submit the property tax payment for the year 2015.

## COUNT IV – NEGLIGENT OR WANTON CONDUCT

43. Plaintiff realleges and incorporates by reference herein each and every allegation set forth in paragraphs 1- 42 of this complaint.

44. The Defendants negligently or wantonly failed to pay the Plaintiff's real estate taxes from her escrow account in 2015.

45. As a result of the negligence, Plaintiff was damaged in that her home was sold at a tax sale and Defendant Corelogic has become unjustly enriched as a result of their own conduct and the tax sale laws in Alabama.

46. Further, whether negligently or wantonly, Defendants have forced Plaintiff to pay exorbitant amounts monthly to pay for their own mistake. In essence, this is double-dipping and

the trier of fact could make reasonable inferences that Defendants' conduct was intentional conduct.

## COUNT V – NEGLIGENT OR WANTON MISREPRESENTATION

47. Plaintiff realleges and incorporates by reference herein each and every allegation set forth in paragraphs 1- 46 of this complaint.

48. The Defendants', jointly and severally, expressly misrepresented they would submit Plaintiff's taxes timely on an annual basis.

49. The Defendants', jointly and severally, previously (before 2015) submitted Plaintiff's taxes timely.

50. Plaintiff relied to her detriment on Defendants' misrepresentations, including relevant time periods from 2015 to the present.

51. Defendants', jointly and severally, failed to pay Plaintiff's 2015 taxes; they further did not communicate these misrepresentations to the Plaintiff. Additionally, they were unjustly enriched by the tax sale and by collecting additional monies monthly from the Plaintiff for their own wrongful conduct.

52. Defendants' continued these misrepresentations until on or about 09/01/2017, which was the first time Plaintiff learned what had happened.

53. As a result of the negligent or wanton misrepresentations, Plaintiff was damaged in that her home was sold at a tax sale, Defendant Corelogic became an "owner of a tax deed" on Plaintiff's property, Defendants' have been and continue to be unjustly enriched as a result of their own conduct and the tax sale laws in Alabama, and the trier of fact could make reasonable inferences that Defendants' misrepresentations were intentional or negligent.

WHEREFORE Plaintiff demands compensatory damages, punitive damages and attorney fees, including costs, in an amount to be determined by the trier of fact.

### JURY DEMAND

**Plaintiff demands a trial by struck jury on all issues in this case.**

*s//Charles E Davis, Jr*
Charles E Davis, Jr. (DAV)149
Attorney for Plaintiff

**OF COUNSEL:**
Charles E Davis, Jr.
Attorney at Law
2820 Columbiana Road
Birmingham, AL. 35216

## **CERTIFICATE OF SERVICE**

          I certify that I have served a copy of the foregoing on all parties and/or attorneys of record, by electronic filing with AlaCourt e-file, this the 8th day of February, 2018.


GMAC Mortgage Group, Inc.
CT Corporation System
2 North Jackson St. Suite 605
Montgomery, Alabama 36104


Ditech Financial LLC
C T Corporation System
2 North Jackson St. Suite 605
Montgomery, Alabama 36104

Ocwen Loan Servicing, LLC
Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, Alabama 36104


Corelogic Services, LLC
Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, Alabama 36104

                                          OF COUNSEL:
                                          Charles E. Davis, Jr.
                                          Attorney for Plaintiff
                                          2820 Columbiana Road
                                          Birmingham, Alabama  35216
                                          (205) 823-3639

## SUMMARY

### ASSESSMENT

| | | | |
|---|---|---|---|
| PROPERTY CLASS: | 3 | OVER 65 CODE: | |
| EXEMPT CODE: | 10 | DISABILITY CODE: | |
| MUN CODE: | 08 PELHAM | HS YEAR: | 2006 |
| SCHOOL DIST: | 2 | EXM OVERRIDE AMT: | $0.00 |
| OVR ASD VALUE: | $0.00 | | |
| CLASS USE: | | | |
| FOREST ACRES: | 0 | TAX SALE: | |
| PREV YEAR VALUE: | $109,500.00 | BOE VALUE: | 0 |

### VALUE

| | |
|---|---|
| LAND VALUE 10% | $27,900 |
| LAND VALUE 20% | $0 |
| CURRENT USE VALUE | $0 |

CLASS 2

CLASS 3
| | | |
|---|---|---|
| BLDG 1 Card 1 | 111 | $81,600 |
| TOTAL MARKET VALUE: | | $109,500 |

### TAX INFO

| | CLASS | MUNCODE | ASSD. VALUE | TAX | EXEMPTION | TAX | EXEMPTION | TOTAL TAX |
|---|---|---|---|---|---|---|---|---|
| STATE | 3 | 8 | $10,960 | $71.24 | $4,000 | | $26.00 | $45.24 |
| COUNTY | 3 | 8 | $10,960 | $82.20 | $2,000 | | $15.00 | $67.20 |
| SCHOOL | 3 | 8 | $10,960 | $175.36 | $0 | | $0.00 | $175.36 |
| DIST SCHOOL | 3 | 8 | $10,960 | $153.44 | $0 | | $0.00 | $153.44 |
| CITY | 3 | 8 | $10,960 | $153.44 | $0 | | $0.00 | $153.44 |
| FOREST | 3 | 8 | $0 | $0.00 | $0 | | $0.00 | $0.00 |

**ASSD. VALUE: $10,960.00**       $635.68       **GRAND TOTAL: $594.68**

### DEEDS

| INSTRUMENT NUMBER | DATE |
|---|---|
| 20051025000554030 | 9/29/2005 |
| 20020000629100000 | 1/25/2002 |
| 19970001335700000 | 4/30/1997 |
| 19970000753500000 | 3/7/1997 |
| 19970000068700000 | 10/10/1996 |
| 19960001271600000 | 3/6/1996 |

### PAYMENT INFO

| PAY DATE | TAX YEAR | PAID BY | AMOUNT |
|---|---|---|---|
| | 2017 | | $0.00 |
| 12/14/2016 | 2016 | MERCURY FUNDING LLC | $656.16 |
| 3/21/2016 | 2015 | MERCURY FUNDING, LLC | $36,673.08 |
| 11/20/2014 | 2014 | CORELOGIC | $594.68 |
| 11/15/2013 | 2013 | OCWEN LOAN SERVICING, LLC | $594.68 |
| 11/19/2012 | 2012 | GMAC MORTGAGE, LLC | $599.32 |
| 11/17/2011 | 2011 | GMAC MORTGAGE, LLC | $710.68 |
| 11/23/2010 | 2010 | GMAC MORTGAGE, LLC | $733.88 |
| 11/16/2009 | 2009 | GMAC MORTGAGE | $717.64 |
| 11/19/2008 | 2008 | GMAC MORTGAGE | $740.84 |
| 11/19/2007 | 2007 | GMAC MORTGAGE | $721.12 |
| 11/20/2006 | 2006 | GMAC MORTGAGE | $670.08 |
| 11/30/2005 | 2005 | CHARLES E DAVIS JR LLC #05232 | $655.00 |
| 11/12/2004 | 2004 | VALUTREE REAL ESTATE | $626.00 |

EXHIBIT "2"

# CERTIFICATE OF LAND REDEMPTION

**#95405**

1975 CODE TITLE 40-10-127
STATE OF ALABAMA, SHELBY COUNTY
OFFICE OF PROPERTY TAX COMMISSIONER, SHELBY COUNTY
TAXSALE DOCKET 56 P 327

**PARCEL#: 13-6-13-1-002-082.000**

WHEREAS, ON THE 21ST DAY OF MARCH, 2016 THE REAL PROPERTY HEREINAFTER DESCRIBED WAS SOLD, IN SUBSTANTIAL CONFORMITY WITH ALL THE REQUISITIONS OF THE STATUTES IN SUCH CASES MADE AND PROVIDED, BY **DON ARMSTRONG**, PROPERTY TAX COMMISSIONER OF SAID COUNTY, TO **MERCURY FUNDING, LLC** FOR THE TAXES, INTERESTS, PENALTIES AND COSTS, THEN DUE AND REMAINING UNPAID ON SAID PROPERTY: AND WHEREAS **CORELOGIC, 3001 HACKBERRY RD., IRVING, TX 75063** HAS MADE AN APPLICATION TO REDEEM SAID LAND.

NOW, THEREFORE, I, **DON ARMSTRONG, PROPERTY TAX COMMISSIONER** OF THE SAID COUNTY OF SHELBY, BEING SATISFIED THAT THE SAID **CORELOGIC** HAS DEPOSITED WITH ME, ON THIS <u>29TH DAY OF MARCH, 2017</u>, <u>THREE THOUSAND FOUR HUNDRED NINETY FOUR & 25/100</u> DOLLARS, FOR THE REDEMPTION OF THE FOLLOWING REAL ESTATE:

| | | | |
|---|---|---|---|
| **SECTION1** 13 | **TOWNSHIP1** 20S | **RANGE1** 03W | |
| **LOT DIM1** 35.59 | **LOT DIM2** 133.73 | **ACRES** 0.110 | **SQ FT** 4,800.000 |
| **MAP BOOK1** 21 | **MAP PAGE1** 147 | **MAP BOOK2** 00 | **MAP PAGE2** 000 |
| **SUBDIV I:** CAMBRIAN RIDGE PHASE 3 | | **PRI. BLOCK/LOT:** /82 | |
| **SUBDIV II:** | | **SEC BLOCK/LOT:** / | |

SITUATED IN <u>SHELBY</u> COUNTY, ALABAMA. ASSESSED TO <u>SNOW CHRISSY I</u>

| | |
|---|---:|
| AMOUNT OF PURCHASE MONEY | $673.08 |
| COST OF REDEMPTION CERTIFICATE | $2.50 |
| INTEREST | $2,139.43 |
| SUBSEQUENT TAXES 2016 | $656.16 |
| INTEREST | $23.08 |
| **TOTAL** | **$3,494.25** |

WITNESS, DON ARMSTRONG,

PROPERTY TAX COMMISSIONER OF SAID COUNTY, THIS 29TH DAY OF MARCH, 2017

*Don Armstrong* (signature)

PROPERTY TAX COMMISSIONER

**OVERBID: $36,000.00**

PAID BY: CORELOGIC PAID $3,494.25 BY CHECK ON 3/29/2017

*Charles E. Davis Jr.*
**Attorney at Law**
Suite 210
2820 Columbiana Road
Birmingham, Alabama 35216
Telephone (205) 823-9992
<u>CHARLES@CEDAVISLAW.NET</u>

September 10, 2017

Ditech Financial LLC
P.O. Box 7153
Pasadena, CA 91109-7153

RE:   My Client: Chrissy Snow
      Your Acct.# 0003028883

Dear Escrow Shortage Department,

   Please be advised that this office has been retained by Ms. Chrissy Snow with regard to the above mortgage currently with your company. My client recently received an escrow account shortage statement on her loan in the amount of $2,804.95. Ms. Snow disputes this amount and we are currently attempting to determine how her mortgage payment can jump approximately $235.00 +/- in one month.

   In an effort to assist in our investigation, we would like for you to provide this office with an itemized statement of the shortage, including the dates and amounts of each payment made out of the escrow account dating back to the original date the loan was acquired by Ditech Financial LLC.

   Should you have any questions or concerns with this request, please contact my office directly. In addition, any communication with Ms. Snow from this date forward shall be made through this office only. I look forward to your timely response and appreciate your time and attention to this matter.

Regards,


Charles E. Davis, Jr.


CEDjr/hd

*Charles E. Davis Jr.*
Attorney at Law
Suite 210
2820 Columbiana Road
Birmingham, Alabama 35216
Telephone (205) 823-9992
CHARLES@CEDAVISLAW.NET

November 29, 2017

Corelogic
3001 Hackberry Road
Irving, TX 75063

RE:    My Client: Chrissy Snow
        Property Address: 400 Cambrian Ridge Trail
        Pelham, Alabama 35124
        Parcel #:    13-6-13-1-002-082.000

Dear Escrow Department,
    Please be advised that this office has been retained by Ms. Chrissy Snow with regard to the above mortgage held by your company in 2014 – 2015. My client has produced documents indicating that your company paid the property taxes on the above referenced property in Shelby County, Alabama on 11/20/2014 in the amount of 594.68. Subsequent to that payment, your company failed to make a tax payment in 2015 resulting in my client's property being sold in a tax sale on 3/21/2016. Corelogic then made a payment of $3,494.25 on 3/29/2017 in an effort to redeem the property.
    Because of your error in failing to make the required tax payment in 2015 and later redeeming the property, my client's mortgage escrow account was shorted resulting in an addition to the monthly payment being increased by $233.75.
    In an effort to assist in our investigation, we would like for you to provide this office with an itemized statement of all payments, including the dates and amounts of each payment made out of the escrow account dating back to the original date the loan was acquired by Corelogic and up to the date the mortgage was sold to the current mortgage holder, Ditech Financial.
    Should you have any questions or concerns with this request, please contact my office directly. In addition, any communication with Ms. Snow from this date forward shall be made through this office only. I look forward to your timely response and appreciate your time and attention to this matter.

Regards,


Charles E. Davis, Jr.

CEDjr/hd



a Walter company

**Ditech Financial LLC**
P.O. Box 6172
Rapid City, SD 57709-6172
T: (800) 643-0202
F: (866) 870-9919
ditech.com

December 12, 2017

CHARLES E DAVIS JR
2820 COLUMBIANA RD SUITE 210
BIRMINGHAM AL 35216

RE: Ditech Financial LLC ("Ditech")
    Account Number: 3028883
    Customer Name: Chrissy I. Snow

Dear Charles E Davis Jr.:

This letter is in response to your correspondence received by Ditech regarding the above-referenced account number.

Enclosed is a payment history for your review. If you find that there is a payment your client's have submitted that is not reflected on the payment history, we will require a legible front and back copy of the cleared check in order to research the missing payment.

If you have any further questions or concerns, please contact our Customer Service Department at (800) 643-0202, Monday - Friday, 7:00 a.m. to 8:00 p.m. CT, and Saturday 7:00 a.m. to 1:00 p.m. CT.

Sincerely,

Ditech
Customer Service

CLK9Pu4x2fG



EQUAL HOUSING
LENDER

Correspondence - Response Letter, 11/17/2015

LTR-199

 PO Box 6172
Rapid City, SD 57709-6172

**Annual Escrow Account Disclosure Statement**

Statement Date: 08/29/2017
Your Loan Account Number: 0003028883

7-776-09932-0000452-001-100-010-000-000

Questions?

CHRISSY I SNOW
400 CAMBRIAN RIDGE TRL
PELHAM AL 35124-4832

View your detailed, up-to-date escrow transactions online at myaccount.ditech.com

Call Customer Service at **1-800-643-0202**
Mon. – Fri. 7 am to 8 pm CST
Sat. 7 am to 1 pm CST

### SECTION 1  WHY AM I RECEIVING THIS STATEMENT?

We review your escrow account every year to ensure it is properly funded, based on your upcoming taxes and/or insurance premiums. This statement provides details of any changes in your escrow account and resulting changes to your mortgage payment.

Our review shows your escrow account has a shortage of $2,804.95. Once we pay your upcoming insurance and/or tax payments, your escrow account will fall below the required minimum balance. See Section 4 for details. Your monthly mortgage payment is also changing October 01, 2017. Your new payment amount depends on which option below you choose:

**OPTION 1: Pay Shortage Now**

- Pay in full by check or money order by Sep. 24, 2017.
- Your new monthly mortgage payment will be $713.27.

**OPTION 2: Spread Shortage Over 12 months (No action required)**

- Add $233.75 per month for 12 months to mortgage payment.
- Your new monthly mortgage payment will be $947.02.

### SECTION 2  WHY ARE MY PAYMENTS CHANGING?

Changes to monthly escrow amounts are common. They're often caused by a change in your taxes and/or insurance premiums. This table shows how your escrow and mortgage payments are changing.

|  | Current Payment | Changes | OPTION 1 New Payment | OPTION 2 New Payment |
|---|---|---|---|---|
| Due Date | 09/01/2017 |  | 10/01/2017 | 10/01/2017 |
| Principal and Interest | $604.35 |  | $604.35 | $604.35 |
| Escrow Payment | $203.47 | $94.55 | $108.92 | $108.92 |
| Escrow Shortage |  |  |  | $233.75 |
| **TOTAL** | **$807.82** | **$94.55** | **$713.27** | **$947.02** |

We use anticipated payments from your escrow account to determine your monthly escrow payment:

Combined Property Insurance   $623.00
Combined Taxes   $684.00
**TOTAL OUTGOING PAYMENTS**   $1,307.00 ÷ 12 months = $108.92 Monthly Escrow

### SECTION 3  WHAT DO I NEED TO DO?

**TO PAY YOUR SHORTAGE NOW**

- Send a check or money order in the amount of $2,804.95, payable to Ditech Financial LLC by Sep. 24, 2017.
- Please write your Loan Account Number and "Escrow Shortage" on the check.
- Send the coupon at the bottom of this statement along with your check in the enclosed envelope.
- Unfortunately, you cannot make your escrow shortage payment online or over the phone.

**TO SPREAD YOUR SHORTAGE OUT**

No action is needed to spread your shortage payments out. If we don't receive a shortage check or money order from you, we'll automatically add shortage payments of $233.75 to your monthly payment.

**REMINDER**
If you use automatic bill pay, please contact your bank to adjust your mortgage payment amount, due October 01, 2017.

  Please detach this escrow shortage coupon, write your loan number and "Escrow Shortage" on a check or money order made payable to **Ditech Financial LLC**, and mail both in the enclosed envelope with the mailing address visible in the window. 

## SECTION 4 HOW IS MY ESCROW SHORTAGE CALCULATED?

Every year, we analyze what you'll need to pay in taxes and/or insurance premiums. We then calculate the amount you'll likely need in escrow to pay these bills. To determine if you have enough funds in your escrow account, we use this formula:

| | | |
|---|---|---|
| Lowest Projected Balance | -$2,587.11 | (in gray below) |
| - Minimum Escrow Balance | $217.84 | (in gray below) |
| Shortage Amount | -$2,804.95 | |

Your escrow account has a minimum balance, as allowed by federal laws, state laws, or your mortgage contract. Your minimum balance includes up to two months of escrow payments to cover increases to your property taxes and/or homeowners insurance. Your minimum escrow balance is $217.84.

This table shows expected payments in and out of your account over the next 12 months:

| Date | What We Expect You to Pay to Escrow | What We Expect to Pay Out | Payment Description | Expected Balance | Balance Needed in Your Account |
|---|---|---|---|---|---|
| Beginning Balance | | | | -$1,933.63 | $871.32 |
| 10/17 | $108.92 | | | -$1,824.71 | $980.24 |
| 11/17 | $108.92 | | | -$1,715.79 | $1,089.16 |
| 12/17 | $108.92 | $684.00 | CNTY TX PARC | -$2,290.87 | $514.08 |
| 01/18 | $108.92 | | | -$2,181.95 | $623.00 |
| 02/18 | $108.92 | | | -$2,073.03 | $731.92 |
| 03/18 | $108.92 | $623.00 | HAZARD INS | -$2,587.11 | $217.84 |
| 04/18 | $108.92 | | | -$2,478.19 | $326.76 |
| 05/18 | $108.92 | | | -$2,369.27 | $435.68 |
| 06/18 | $108.92 | | | -$2,260.35 | $544.60 |
| 07/18 | $108.92 | | | -$2,151.43 | $653.52 |
| 08/18 | $108.92 | | | -$2,042.51 | $762.44 |
| 09/18 | $108.92 | | | -$1,933.59 | $871.36 |
| Ending Balance | | | | -$1,933.59 | $871.36 |
| TOTAL | $1,307.04 | $1,307.00 | | | |

## SECTION 5 WHAT HAPPENED SINCE MY LAST ESCROW REVIEW?

In this table, you can see payments you made into your escrow account and outgoing payments we made from your escrow account. If we projected to pay out a significantly different amount, you'll see the difference noted in gray. These differences may impact whether you have enough funds in your escrow account.

| Date | What You Actually Paid to Escrow | What We Expected You to Pay to Escrow | What We Actually Paid Out | What We Expected to Pay Out | Payment Description | Actual Balance | Expected Balance from Last Review |
|---|---|---|---|---|---|---|---|
| Beginning Balance | | | | | | -$2,544.04 | $571.66 |
| 07/17 | $203.47 | $114.34 | | | | -$2,340.57 | $686.00 |
| 08/17 | $203.47 | $114.34 | | | | -$2,137.10 | $800.34 |
| 09/17 | $203.47 E | $114.34 | | | | -$1,933.63 | $914.68 |
| Ending Balance | | | | | | -$1,933.63 | $914.68 |
| TOTAL | $610.41 | $343.02 | $0.00 | $0.00 | | | |

E = estimated future payment